# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| ELIJAH HOUSER, JR., | : | |
| Plaintiff, | : | |
| vs. | : | CA 15-0074-C |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 17 & 19 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the December 9, 2015 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 17 & 19 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of
(Continued)

Plaintiff alleges disability due to herniated nucleus pulposus with foraminal stenosis at L5-S1, status-post posterior lumbar inter-body and spinal fusion L4-5 with incidental dural tear (2007 and revision in 2011), status-post posterior lumbar inter-body and spinal fusion at L5-S1, status-post spondylolisthesis, foraminal stenosis, facet arthosis, bilateral leg pain, and chronic back pain; uncontrolled diabetes; severe headaches; hypertension; obesity; depression; chronic liver disease; and fatigue. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1.   The claimant last met the insured status requirements of the Social Security Act on June 30, 2012.
>
> 2.   The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 23, 2010 through his date last insured of June 30, 2012 (20 CFR 404.1571 *et seq*.).
>
> 3.   Through the date last insured, the claimant had the following severe impairments: history of subarachnoid hemorrhage; obesity; degenerative disc disease of the lumbar spine; and depression (20 CFR 404.1520(c)).
>
> Claimant's above stated impairments cause limitations that have more than a minimal effect on claimant's capacity to perform basic work activities.
>
> The claimant's diabetes mellitus is a nonsevere impairment because it does not cause a limitation that has more than a minimal effect on claimant's capacity to perform basic work activities. By way of history, the claimant presented to Julio C. Delgado, M.D., for diabetes mellitus care. On April 22, 2008, Dr. Delgado opined his blood sugars were out of control at level 167. During follow-up visits in May, the claimant's blood sugar levels increased as high as 191. Dr. Delgado placed him on Symlin. In June of 2008, his glucose level was 167. On September 9, 2008, the claimant had severe fatty liver infiltration; and his pain had been depriving him of sleep. His glucose level was 225. His physical examination was generally unremarkable. Dr. Delgado diagnosed him with diabetic neuropathy, Type II, metabolism disorder, benign hypertension, stable, systolic heart failure, and stable chronic liver

---

Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.''))

disorder. At follow-up on May 11, 2011, his glucose level was 246. He had not taken Symlin for the past three weeks. Dr. Delgado restarted his Symlin (Insulin used for treatment of diabetes mellitus); and he adjusted his Levemir (generic brand of Insulin used to treat diabetes mellitus). The claimant presented to Dr. Delgado for follow-up care for his diabetes mellitus in January of 2011. He had no insurance[,] so he was buying over-the-counter medications and he was checking his blood sugar level with someone else's meter. On March 22, 2012, during another follow-up for his diabetes mellitus, his blood glucose was 256. Dr. Delgado refilled his medications. The aforementioned presents clear evidence of noncompliance. Moreover, the record indicates he has no vision difficulty; and he denied end organ damage during the consultative examination. Therefore, this condition has established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to work. Additionally, there has been no substantial evidence to contradict the effectiveness of medication and/or medical advice compliance; and the medical evidence fails to support a finding that the impairment is a severe impairment that considered singly and in combination caused more than a minimal limitation on the claimant's ability to perform basic work activities and is therefore, nonsevere.

. . .

**4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525, and 404.1526).**

. . .

**5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can perform occasional pushing or pulling with the lower extremities. The claimant is precluded from climbing ladders, ropes, or scaffolds. The claimant can perform occasional climbing of ramps and stairs. The claimant can perform occasional balancing, kneeling, crouching, crawling, and stooping. He must avoid concentrated exposure to extreme heat, cold, and vibration. He can have no exposure to dangerous machinery, unprotected heights[,] or work requiring walking on uneven terrain. During a regularly scheduled workday, or the equivalent thereof, the claimant can understand and remember short and simple instructions; but he is unable to do so with detailed or complex instructions. He can do simple, routine, and repetitive tasks; but he is unable to do so with detailed or complex tasks. The claimant can have no more than occasional, casual, non-transactional contact with the general public. His contact with the general public should not be his usual job duty. He can accept**

3

**constructive, non-confrontational supervisor criticism. Finally, the claimant can deal with changes in the workplace, if they are introduced occasionally and gradually.**

. . .

At the hearing, the claimant testified that he could not work because of pain, his diabetes mellitus, and trouble concentrating.

. . .

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

. . .

As for his degenerative disc disease of the lumbar [spine], he has had surgical treatment of this condition and the evidence revealed that his lumbar spine MRI was normal except for some degeneration at L5-S[1]; and there was no significant right-sided nerve root impingement causing right leg pain. Additionally, his musculoskeletal examination revealed no peripheral synovitis or arthropathy; and he had a negative neurologic with no neurologic deficits. Likewise, he had normal grip strength and dexterity. His blood pressure was okay during the examination. Furthermore, the pain management notes indicated that his reduced pain allowed him to go to church: he reported pain as 5/10; and he reported 30% pain level improvement with current treatment plan that allowed him to be independent with his activities of daily living, help with housekeeping, and attend church. Furthermore, upon examination, his treating physician found him stable on medications. Finally, the surgically treated condition was described as resolved *except for his current condition*—perhaps his subjective pain complaints.

. . .

His activities of daily living are not consistent with a disability. He can feed himself. He can toilet independently. He prepares his own meals such as sandwiches, fruits, cereal, and popcorn. He folds clothes and irons. He drives. He shops. He spends time with his family attending church. He goes to church and the grocery store on a regular basis: and he has never been fired because of problems getting along with others

(Exhibit B2E[2]). In conclusion, the undersigned finds the objective medical evidence and the activities of daily living indicative that the claimant's impairments are not as disabling as alleged.

. . .

**6.	Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).**

. . .

---

[2]	The undersigned cites this Exhibit number—while excluding all other citations—because the ALJ made reference to this exhibit earlier in his opinion, as follows:

> The claimant[,] along with his wife[,] completed a function report dated[] February 16, 2011[] that indicated the following: He lives in a house with his new wife. They were married December 31, 2010. During the day, he gets up and takes his medicine and moves around as much as possible. He is limited [i]n his activities dependent upon the amount of pain he is experiencing. He tries to do things before taking his medication because it makes him "high". Some days are better than others. He has problems putting on his socks and shoes, bathing lower extremities such as ankle[s] and feet; and he never takes baths because it is hard to get out of the tub. His wife or barber takes care of his hair. He can feed himself. He can toilet independently. He needs reminders to care for personal grooming; and he needs someone to accompany him to appointments because he forgets. He prepares his own meals such as sandwiches, fruits, cereal, and popcorn. He folds clothes and irons. He does not repair anything or do any mowing. His father and nephew take care of the outside and his wife takes care of the housework. He goes outside as often as he can, except in extreme cold or rainy weather because of pain. He drives when he is not heavily medicated or in a lot of pain. His wife or family goes with him shopping. He is not able to pay bills, count change, handle a savings account, or use a checkbook because he gets confused and angry. He spends time with his family attending church. He goes to church and the grocery store on a regular basis. He has problems getting along with family, friends, neighbors, or others because he does not have a normal life. He has problems lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, concentrating, understanding, following instructions, using his hands; and he has problems with his memory. He has a problem paying attention, following written and spoken instructions because of forgetfulness or falling asleep. He has never been fired because of problems getting along with others. He does not handle stress because he has to take medicine for it. He does not handle changes in routine because he hates his current life (Exhibit B2E). *The undersigned has considered the part of this opinion as that of the claimant's wife as a non-medical, third-party opinion in accordance with 20 CFR 416.913(d) and SSR 06-03p. In doing so, the undersigned gives no weight to that portion of this opinion.*

(Tr. 284-285 (emphasis supplied).)

7. The claimant was born on September 30, 1971 and was 40 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

. . .

Through the date last insured, if the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as inspector (sedentary and unskilled), DOT# 739.687-182, 3,000 local jobs available and 100,000 national jobs available; sorter (sedentary and unskilled), DOT# 521.687-086, 6,000 local jobs available and 400,000 national jobs available; and machine tender (sedentary and unskilled), DOT# 690.685-258, 2,000 local jobs available and 100,000 national jobs available.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of

"not disabled" is therefore appropriate under the framework of the above-cited rule.

> **11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 23, 2010, the alleged onset date, through June 30, 2012, the date last insured (20 CFR 404.1520(g)).**

(Tr. 280-281, 281, 283, 285, 288-289, 289, 290 & 291 (most internal citations omitted; footnotes omitted; emphasis in original).) The Appeals Council affirmed the ALJ's decision (Tr. 1-4) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Soc. Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

claimant establishes that he cannot perform his past relevant work, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment, which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those sedentary jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

In this case, the plaintiff contends that the following errors were committed in this case: (1) the ALJ erred in finding that his diabetes is a non-severe impairment; (2)

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

the ALJ failed to follow the Eleventh Circuit's pain standard; and (3) the Appeals Council failed to adequately examine the additional evidence submitted to it. Because the undersigned finds, in this decidedly "pain" case, the ALJ's analysis of plaintiff's credibility particularly lacking, the undersigned only parenthetically considers plaintiff's other issues.

The Eleventh Circuit has consistently and often set forth the criteria for establishing disability based on testimony about pain and other symptoms. *See, e.g., Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991).

> [T]he claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson, supra,* 284 F.3d at 1225 (internal citations omitted; footnote added).

"20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms *must* be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater,* 67 F.3d 1553, 1561 (11th Cir. 1995) (emphasis supplied). In other words, once the issue becomes one of credibility and, as set forth in SSR 96-7p, in recognition of the fact that a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by objective medical evidence alone, the adjudicator (ALJ) in assessing credibility must consider in addition to the objective medical evidence the other factors/evidence set forth in 20 C.F.R. § 404.1529(c). More specifically, "[w]hen evaluating a claimant's

subjective symptoms, the ALJ *must* consider the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief . . . of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Commissioner of Social Security Administration*, 377 Fed.Appx. 944, 947 (11th Cir. May 6, 2010) (emphasis supplied), quoting 20 C.F.R. §§ 404.1529(c)(3); *see also* SSR 96-7p ("In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence . . . that the adjudicator *must* consider in addition to the objective medical evidence when assessing the credibility of an individual's statements[.]" (emphasis supplied)).

> "Subjective pain testimony that is supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the claimant complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen,* 831 F.2d 1007, 1011 (11th Cir. 1987) (citations omitted). However, if the ALJ decides not to credit a claimant's subjective complaints as to her pain, "he must articulate specific and adequate reasons for doing so." *Holt,* 921 F.2d at 1223. "Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true." *Id.* (citation omitted).[5] "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam) (citation omitted).

---

[5] "[I]f the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true." *Frizzell v. Astrue,* 487 F.Supp.2d 1301, 1305 (N.D. Ala. 2007).

*Leiter, supra,* 377 Fed.Appx. at 947 (footnote added).

In this case, the ALJ clearly recognized that plaintiff's underlying medically determinable impairments "could reasonably be expected to cause the alleged symptoms[,]" (Tr. 288); however, his additional finding that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[,]" (Tr. 289), is not supported by substantial evidence.

The plaintiff testified that he has pain in his back, legs, and hips; that he constantly changes positions to relieve his pain; that he takes strong painkilling medications (at the time of the hearing, he was taking Oxycodone and Lyrica); that a stimulator was surgically implanted in his back to help relieve his chronic pain; and that while he does go to church twice a month, shops with his wife, reads, watches TV, and walks for short periods of time, he has difficulty putting on his shoes and cannot pick up his five-month old son and walk around with him. (*See* Tr. 305-306 & 308-309.) Interestingly, although the ALJ did not set forth the specifics of plaintiff's hearing testimony (*see* Tr. 285 ("At the hearing, the claimant testified that he could not work because of pain, his diabetes mellitus, and trouble concentrating.")), it is apparent that he found plaintiff's pain allegations inconsistent with his daily activities (*see* Tr. 289 ("His activities of daily living are not consistent with a disability.")). The ALJ relies on Exhibit B2E (Tr. 427-434) to support his contention in this regard (Tr. 289). However, the undersigned is unable to find that this Function Report (Tr. 427-434) supplies substantial evidence to support the ALJ's credibility determination because, earlier in his opinion, the ALJ rejected at least a portion of the report on the basis that it constituted the opinion of plaintiff's wife (*see* Tr. 284-285 ("The undersigned has considered the part of this opinion as that of the claimant's wife as a non-medical, third-party opinion in accordance with 20 CFR 416.913(d) and SSR 06-03p. In doing so, the

11

undersigned gives no weight to that portion of this opinion.")), without specifically identifying what portion of the report (which was indisputably completed by both plaintiff and his wife—Tr. 434) he was rejecting (*see id.* at 284 & 285). Moreover, in recounting the daily activities plaintiff and his wife set forth in the report, the ALJ ignored the full scope of the information supplied in the report. (*Compare* Tr. 289 *with* Tr. 284 & 427-434.) For instance, the ALJ emphasized that plaintiff reported he can drive (Tr. 284) but ignored that plaintiff only drives if he is not heavily medicated or in a lot of pain (Tr. 430). In addition, the ALJ noted plaintiff can feed himself and toilet independently (Tr. 284) but ignored that plaintiff and his wife reported that he has numerous problems with personal care, including that at times he has a hard time putting on socks and shoes (if he can put them on at all), if is hard for him to bathe his lower extremities, he needs help with his hair and shaving, and even though he can toilet independently, using the restroom "take[s] a lot out of [him][.]" (Tr. 428.) These are but a few examples of the ALJ's wholesale "cherry-picking" in this regard.

It is recognized in the Eleventh Circuit that "participation in everyday activities of short duration, such as housework or fishing," does not disqualify a claimant for disability. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997); *see also Frizzell, supra,* 487 F.Supp.2d at 1306 ("The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled."). This is particularly true where, as here, the ALJ selectively describes the plaintiff's activities by simply listing them without concomitantly setting forth the plaintiff's limiting description of those activities. *See Horton v. Barnhart,* 469 F.Supp.2d 1041, 1047 (N.D. Ala. 2006) ("The ALJ's selective description of the plaintiff's activities is disingenuous, as he accepts her listing of her activities, but not her limiting description of them."). Because the ALJ's rejection of plaintiff's back, leg and hip pain complaints is founded

solely on a description of plaintiff's daily activities, a description replete with inaccuracies or only partial "truths," the ALJ's sole articulated reason for rejecting plaintiff's back and leg pain testimony[6] is not supported by substantial evidence. *Cf. Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) ("Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true."). Therefore, this error requires remand of this action to the Commissioner of Social Security.

---

[6] It is relatively clear to the undersigned that the ALJ focused on plaintiff's daily activities because it did not behoove him to focus on any other factor in § 404.1529(c)(3), particularly since the record is replete with evidence of surgeries plaintiff received to relieve his pain (*compare* Tr. 590 (on July 18, 2011, plaintiff had the following surgical procedure: "Revision posterior spinal fusion, L4-5, with titanium Biomet Polaris instrumentation, platform DBM insertion of EBI electrical bone stimulator, repair of dural tear, re-exploration microscopic partial hemilaminectory, foraminotomy L4-5, discectomy L4-5 on the right, with PLIF, posterior lumbar interbody fusion, with OsteoStim implant, and aspiration of right posterior iliac crest bone marrow.") *with* Tr. 633 ("This patient is seen for back and bilateral leg pain, status post lumbar surgery times 4[,] including multilevel fusion[.]")), the need for him to constantly change positions to relieve pain (Tr. 305), and his dependence on strong painkilling medication, even after surgical insertion of the stimulator (*see, e.g.,* Tr. 633 (on September 14, 2011, plaintiff was prescribed Oxycodone, Lyrica, and Cymbalta); 639 (on November 3, 2011, plaintiff was prescribed Roxicodone, Lyrica, and Cymbalta); 643 (on January 15, 2012, plaintiff was continued on Roxicodone, Lyrica, and Cymbalta); Tr. 706 (on April 18, 2012, plaintiff was continued on Roxicodone, Lyrica, and Cymbalta); Tr. 722 (on July 11, 2012, plaintiff was continued on Roxicodone, Lyrica, and Cymbalta); Tr. 738 (on October 1, 2012, plaintiff was continued on Roxicodone, Lyrica, and Cymbalta) & 772 (on December 20, 2012, plaintiff was continued on Roxicodone, Lyrica, and Cymbalta)). The record in this case is notable for the fact that no medical provider has ever suggested that plaintiff does not have chronic low back pain (or associated bilateral leg pain) or questioned plaintiff's description of the severity of that pain. (*See, e.g.,* Tr. 497-509, 588-590, 594-597, 599-602, 633-639, 643, 653-661, 665-669, 675-676, 706-707, 722-727, 737-752 & 771-774.)

The undersigned simply notes that Roxicodone tablets are "an immediate-release oral formulation of oxycodone hydrochloride indicated for the management of moderate to severe pain where the use of an opioid analgesic is appropriate." http://www,drugs.com/roxicodone.html (last visited, December 15, 2015, at 10:47 a.m.). In addition, Lyrica is indicated for the management of neuropathic pain associated with spinal cord injury, http://www.druglib.com/druginfo/lyrica/indications_dosage (last visited, December 15, 20125, at 10:51 a.m.), and Cymbalta is indicated for the management of chronic musculoskeletal pain, http://www.druglib.com/druginfo/cymbalta/indications_usage (last visited, December 15, 2015, at 10:53 a.m.); *see also id.* ("This has been established in studies in patients with chronic low back pain (CLBP) and chronic pain due to osteoarthritis.").

In addition, because the ALJ's credibility determination is flawed, this Court is unable to find that the ALJ provided the linkage necessary to substantiate his RFC determination.[7] Accordingly, this cause is due to be remanded to the Commissioner of Social Security for further proceedings not inconsistent with this decision.

---

[7] The ALJ's decision is troublesome because he goes to much greater lengths than this Court has ever seen to reach the determination that plaintiff's insulin-dependent diabetes mellitus is a non-severe impairment (Tr. 280-281), when the evidence of record (*see, e,g,* Tr. 514, 588, 599-600, 606, 612, 615, 617, 622-623, 626-627, 712-716 & 757-758), and case law, *compare McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected.") *with Arnold v. Colvin,* 2015 WL 1458149, *1 (N.D. Fla. Mar. 30, 2015) ("The claimant has the following severe impairments: diabetes mellitus, insulin dependent, . . . ."); *Davis v. Colvin,* 2014 WL 793589, *1 (N.D. Ga. Feb. 26, 2014) (severe impairments found by ALJ included insulin-dependent diabetes mellitus) and *Byrd v. Astrue,* 2010 WL 3749083, *1 (S.D.Ala. Sept. 21, 2010) (noting the ALJ's finding that the claimant's severe impairments included "**a history of insulin[-]dependent diabetes mellitus with secondary mild diabetic peripheral neuropathy in lower extremities** . . . ." (emphasis in original)); *cf. Brown v. Astrue,* 280 Fed.Appx. 872, 875 (11th Cir. Jun. 3, 2008) ("The ALJ determined that Brown had the following [severe] impairments: ***non-insulin dependent diabetes mellitus.***" (emphasis supplied)), *cert. denied,* 555 U.S. 1115, 129 S.Ct. 936, 173 L.Ed.2d 137 (2009), support a contrary conclusion, and the ALJ failed to determine whether plaintiff's documented noncompliance was excusable because he lacked insurance, *compare Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir. 1988) ("[P]overty excuses noncompliance.") *with Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003) (finding an ALJ must determine whether the claimant could afford the prescribed treatment) and *Moffatt v. Commissioner of Social Security*, 2015 WL 1038014, *3 (M.D. Fla. Mar. 10, 2015) ("The language in *Dawkins* suggests that less than exclusive reliance on noncompliance does not excuse the failure to consider the poverty issue."). This Court has a hard time wrapping its head around why the ALJ did not simply find plaintiff's insulin-dependent diabetes mellitus to be a severe impairment before addressing the remaining steps in the sequential evaluation process.

Finally, on remand the ALJ can certainly consider the relevance, if any, of the Medical Source Statement and Clinical Assessment of Pain completed by plaintiff's treating surgeon, Dr. Scott Faulkner, on December 27, 2013 (Tr. 248-252), particularly in light of Dr. Faulkner's statement that the limitations reflected on the medical source statement existed during the relevant time period (*compare* Tr. 252 (noted limitations in effect since 2008) *with* Tr. 280 (claimant's insured status expired on June 30, 2012)) and the fact that the one item lacking before the ALJ at the time of the administrative decision on June 20, 2013 (*see* Tr. 291) was a competent statement regarding plaintiff's physical ability to sit, stand, walk, lift and carry weight, etc., in light of his undeniable back pain and numerous surgeries. The ALJ's apparent determination that plaintiff is capable of performing the substantial sitting required of sedentary work, *compare* Tr. 283 ("[T]**he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can perform occasional pushing or pulling with the lower extremities.**") *with* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined (Continued)

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 21st day of December, 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."), is curious in light of all the hardware in Houser's low back (*see* Tr. 683-684) and plaintiff's testimony that he constantly has to change positions to relieve his back and leg pain (*see* Tr. 305).